In other words, the ZBA had determined that the south parcel was not, nor could it ever be, cemetery property, and this was a complete and unambiguous definitive position as to how the property may develop. Thus, the decision was ripe for full adjudication and should never have been dismissed. Rightness should be applied prudentially rather than jurisdictionally. Reversing the lower court decision is the proper way to proceed here, and we will deal with any subsequent motions to dismiss upon the merits of the case at the appropriate time. For now, we simply must not be denied the right to prosecute our action. Thank you very much. Judge Lynch, Judge Marrero, can you hear me? Yes, I can. Yes, I can. I was on mute. Oh, I'm sorry, Judge. I'm sorry. No problem. I'm glad you alerted me. Let's hear from Mr. Lieberman. I thought we were going to have questions. Oh, sorry. Yes, we should have questions. We well exceeded the time, but let's go. Let's have some questions. Judge Lynch? Yes, Mr. Mulligan, it seems to me, and I think your presentation was very illuminating about this, but it seems to me that the dispute with the town that was immediate here is as to whether you can build the projected building on that property. Am I wrong about that? No, you're not. But then why, if you could obtain a variance, and I take it that the theory of the town is that this property is zoned residential and that the size or scope or something like that of the projected garage exceeds what would be appropriate to a cottage and garage, and possibly you could have a variance that would permit the building of the kind of building that you are proposing if you applied for one. Am I mistaken about that? No, you're not mistaken, Your Honor, but to simply put, and this is why I— No, no, excuse me. I just wanted the answer to that, because I think I understand what you're going to say next, which is that what you believe is that you are substantively entitled to build the building you want because properly the property is cemetery use and not residential, not properly zoned as residential. Is that right? Your observation is 100% correct. So what you are fighting about here substantively is not your right to build the building that you are trying to build, but is the underlying state law issue of whether that property, by virtue of the grant back in 1902, is forever cemetery property or whether since that land passed through other people's hands who were not cemeteries in the time between 1902 and 1963 it is properly zoned residential. Is that not the substance of your dispute with the town? I think that's well stated, Your Honor, and the point of this motion is that let's face those issues on the merits in the district court when we are allowed to present our case. Right. I get that. Excuse me. I get that. Okay. But what does that have to do with the Due Process Clause? That is to say, the Due Process Clause concerns the appropriateness of the procedures that are used in enforcing, in either creating zoning or enforcing zoning. But the dispute you've got is whether you have, in effect, a property interest in using that property as cemetery property because of a state law grant that antecedes any zoning or whether you don't have such a property interest under state law. Isn't that really what the issue is? That's the threshold issue and our property has been taken. Well, but before we get to whether your property is taken or whether the taking of the property was done in accordance with due process, there's a question of whether there is a property interest and that's determined by state law. Am I wrong? I believe that is probably correct. But again, the district court has denied our ability to go ahead and deal with all of these issues. Well, but excuse me. Excuse me, Mr. Mulligan. Yes. Why would that issue of property be a federal issue in the first place? It's an issue of as I understand it, is in litigation in the state courts as we speak. Because a fair reading of our complaint sets forth four causes of action under the federal constitution, including the takings and due process, as you refer to, and it's better set forth there than I could do it right here. But if the state court decides that you are wrong in your interpretation of how the grant of property in 1902 operates, then there's nothing left for the federal court to do. Is that not right? I'm not sure I would agree with that totally. It doesn't sound crazy. I'm glad it doesn't sound crazy, but let me try to put the issue another way, or at least ask a question relevant to at least my understanding of this. As I understand it, the state supreme court and then the appellate division both decided the property issue against you. Am I wrong about that? No. And could you, and this is just a status question, as I understood the brief, Ferncliff had sought a leave to appeal to the New York court of appeals from the appellate division. What is the status of that application? That is pending, your honor. It's been pending for over a year? Yes. Amazing. Okay, but while that is pending, why aren't you collaterally stopped by what is currently a valid judgment of the state courts from making the contention about what property interest you have, because the state courts have so far decided that you don't have that property interest? That would be a decision on the merits, and we have been denied the right to get to argue that, because the lower court has wrongly decided that the zoning board decision that we've all been arguing about was not final. Well, but excuse me. Excuse me, Mr. Mulligan, I understand what you're saying, but the trouble that I'm having is the application that you made, the denial of which you say deprives you of property rights, is one that is subject to the possibility of a variance. That is, you might be able to build the exact building that you want to build, and therefore not be deprived of your property rights at all, and we don't know that until the variance option is pursued. On the other hand, what you want to fight about, you don't want to apply for a variance, because you maintain you have a state law property interest that the state courts have so far firmly denied that you have. So why is it ripe for us to of a taking of your property by means of a denial of an application to do a particular thing, when A, you might be able to do that thing, and B, the reason why you don't want to find out whether the town will allow you to build the thing you want to build is because you're being stiff-necked about your rights that are under litigation in the state courts and that have so far been decided against you. Why should a federal court jump into this in order not to decide whether the procedures are fair by which you've been denied the right to do a particular thing, but in order solely to decide that you have a property right under state law that the state courts say you don't have? Why is that an appropriate thing for a federal court to do? Because we have the right to bring a federal case, which we have done. And all of the issues that you're talking about can be presented to the district court at the proper time. And the district court should decide the state law question, and probably never even get to any federal issue, because if it's decided as a matter of state law that the property is cemetery property, not that it's owned by a cemetery, but that it is properly dedicated as a matter of land use to cemetery uses, that should be decided by the federal court even though there's not really going to be a federal issue as to procedures or zoning or anything of the sort. You are saying the federal court should intervene and decide the state law issue now, which is not really necessary to decide whether you can build the garage you want to build, and which is being litigated in the state courts. That's what you're asking the district court to do. Is that right? The district court has the jurisdiction, and one issue that we're overlooking in this discussion, and I respect everything you're saying, Your Honor, is the issue of futility. And the fact of the matter is, to apply for a variance would be to admit that we are not cemetery property. As the Zoning Board of Appeals talk about being stiff-necked, has taken. We disagree with that, and given the history that's set forth in the complaint, this is decades long. We've been fighting this town. They have tried to thwart us at every effort. It's all laid out in the complaint. I hate to bore you with that, but that's the fact. Well, they let you build the first cottage, the one you want to demolish. Yes, they did. So why don't they let us build this one? Okay. I think that's all my questions. Thank you. Okay. Thank you. Judge Marrero. Thank you, Miss. Building on what Judge Lynch just asked concerning the state law proceedings, a couple of questions. One is, in the state law proceedings, the Article 78, did you raise your federal arguments or federal claims under parallel law doctrine? State courts can just as well as federal courts adjudicate federal claims. And if you were there and the state court could have resolved those issues that you're raising here, did you ever pursue it? And second, was there any other, was there any argument that the federal court could stay or should stay in federal jurisdiction in favor of the state court proceedings under the Colorado River Doctrine? We don't think Colorado River applies. I believe that my partner, Jimmy Gladart, could handle that better. But the fact of the matter is that we have, and I believe the town suggested at one point to the district court that the action be stayed. And the fact of the matter is there are two Colorado River-related state court actions which have been displayed pending the outcome of the underlying Article 78 petition and dismissal. And as I said to Judge Lynch, we are still waiting. So the state court has not finally spoken on our claims, which are similar to The issue before Judge Seibel was whether the Zoning Board of Appeals decision to deny the permit was final. Even Judge Thorsen, who openly dismissed our petition, held on a similar motion to dismiss that it clearly was a final decision. We are a cemetery property. You have not answered my question, which is, did you raise these federal issues in your state court proceedings? And if not, why not? I believe our claims are similar, obviously not citing the federal statutes, however. All right. Thank you. Okay. Can you hear me? Yes. That's how I make sure I understand the record. You did not apply for a use variance. Is that right? Correct. And the ZBA did advise you that a use variance was required, right? They suggested it, as I recall. Yes. And I want to understand this record. Your appeal of the ZBA decision in state court, to which there's been reference over quite a few minutes here, that's still ongoing. Is that right? That's correct. And you filed a motion for leave to appeal the New York Court of Appeals. Is that right? That is correct. And we are awaiting decision on that. I see. And how do you reconcile your position here, that you've obtained the final decision, with our decision in Murphy, that's a 2005 decision of our court, with which I know you're familiar. Yes, we cited and discussed Murphy. I'd have to try to grab my brief here, but this was a, in reality, this decision was clearly final. And if you give me one second here. We, under the Murphy case, the fact of the matter is, we didn't go for a variance, but we did appeal the decision to the ZBA. And we submit that the appeal of the building inspector's determination more than satisfies the meaningful application for a variance required in some cases. The issue was whether the south parcel was dedicated to cemetery use. The process lasted for 12 months, far longer than the two- or three-month typical variance application. Substantial time and effort was expended by Farncliffe and the neighbors. And so we believe that we satisfied what we had to do. So you want us to conclude that the so-called futility exception to the rightness requirement applies here, because you believe that the town's actions caused actual and direct harm to Farncliffe, right? Yes, but we hold in the first case that you reverse on the grounds that, in fact, it was final. And if not final, then apply the futility exception. Okay. But that's correct. All right, so that's good. Thank you very much. We'll hear from opposing counsel. Can you hear me? Hello? I can. Okay. Judge Cabrera can hear you. And Judge Lynch can hear you. Yes. And Judge Marrero. Yes, I can hear you. Fine. Mr. Lieberman, go ahead. Good afternoon, Your Honors. May it please the Court, my name is Edward Lieberman, and I am arguing here today on behalf of Richard Marazzi, who unfortunately is quarantining at home. In light of the fact that we had originally waived oral argument and only found out yesterday that we were to argue, number one, and number two, that I would be arguing, my argument will be mercifully brief. Williamson, Williamson, Williamson, and Gerrer. This is a, you know, we can quibble with some of the statements made about the facts of this case, but I don't think that's particularly pertinent to this discussion. The appellant is asking you to, in effect, supersede the Zoning Board of Appeals in a land use issue, which are generally speaking and recognized to be state court issues. The history that Mr. Mulligan has described as being digging in the town's heels had nothing to do with the Zoning Board of Appeals. It had to do with the town board on the parcel that is across the street from the parcel in question. The parcel in question was separated in ownership back in 1910 from the cemetery parcel, and in fact, in 1993, when the appellant actually filed a use variance application for the same use on the parcel, it described the parcel as separate from the cemetery parcel. Moreover, before the Zoning Board of Appeals, the appellant's counsel stated clearly and concisely that once the ownership of the parcel passed to third parties that were unrelated to the appellant, its rights to use the parcel for cemetery purposes were rendered academic. We would argue that, very simply, the case law is clear under Williamson and Murphy that in order to be final, in order to be final, and in order for a reviewing court to determine how the zoning ordinance will be applied to a parcel, there must be an application for development. Not an interpretation, an actual application for development in the form of a variance, generally speaking. And with respect to the issue of, and clearly that hasn't happened here. The appellant has clearly acknowledged that they have not, they have thus far refused to seek a variance. With respect to the futility argument, I would refer the court to its decision on Dreher, where, as here, the applicant was advised, and here it's even stronger than in Dreher, because in this case, not only the zoning board, but the building inspector advised the appellant that it could seek a variance. And that they have not done, and in view of the fact that it hasn't been done, there is no futility under the Dreher case. That's all I have. That's fine. Thank you. Judge Lynch? So, Mr. Lieberman, I take it that the town is, I don't want to use a word like intransigent, but that the town firmly believes that this property is not open to use as a cemetery as of right. Am I right about that? Correct. And that was the issue before the zoning board, was whether they have the absolute right to use it for cemetery purposes. Right. So, if they said we'd like to bury some bodies over there, you would agree that it's futile, it would be futile for them to ask for a variance, wouldn't you? No, absolutely not. Because the town might allow this to be turned into a cemetery so long as it's done under a variance? It has the discretion and authority to do so, the zoning board. Okay, I hear what you're saying. But at any rate, the application that was made here was an application to build a larger house with a larger garage, or maybe the same house with a larger garage. I don't know, but a larger garage anyway is important to this. That's the application that was before the town. Yes? No. The application that was before the zoning board was for an interpretation that they have the right to use it as of right. Now, in support of that, they submitted a plan for a building. But the underlying issue, or the actual issue, and the only issue, was whether or not they had a right to use it for cemetery purposes as of right. Right, but the particular use that they're proposing is for this garage, right? That was the only structure, but they were asked, and my recollection is that they did not limit themselves to that alone. And it's obvious from the brief that they actually intend a lot more than that. They intend to be able to use it for interments. Well, that's what they say they have a right to do. But you're saying that the actual application before the zoning board was not limited to the plan for building this structure. Is that right? Well, it was the only thing that they submitted in support of, as an example of the use that they wish to make. Yes, in that respect, the only thing that they submitted to the zoning board was the structure. And the building inspector didn't have before him some plan for a mausoleum or a grave, did he? No. The building inspector was shown plans for a particular building, and he said, that's not appropriate in this residential area, but you could apply for a variance. Isn't that the state of play? Yes. But you could extrapolate that to any... You know, I have a certain belief that you're not helping yourself, because it seems to me that what you're saying is, this is all futile, because really what the fight is about is about how the land should be zoned. And neither you nor they have any real interest in whether they can build a big garage on this property. The fight is all about the property right, and whether as of right, based on a 1902 grant, they can do anything they want that is cemetery use on this property, including making it a cemetery. And you say they don't, and they say they do. Isn't that what the fight is all about? Well, those were among the issues that were a part of the litigation that has gone on now for four years. Right. That the appellant wants you to supersede. So why haven't you made a final decision, or your client made a final decision, that you're right and they're wrong? And that's not going to change? I'm not sure I follow that question, but... Well, I mean, they're saying that it's futile for them to ask for variances. It's futile for them to do anything, because you're never going to allow them to use that as a cemetery. That's why you're fighting them. I don't know how they could make that argument, not having applied for it. Okay. There are any number of ways that, A, the structure can be built, that either by variance or by adjusting the size.  So suppose they made an application for a variance that would permit them to build this particular structure that the building inspector denied. Would they be able to reserve their rights, in effect, and say, look, we think that we have a... We're not conceding that we need a variance, because we think we have a right to do this as of right. But let's just bracket that question and apply for a variance. Is that permissible, or would you take the position that by asking for the variance, they've conceded inherently that they don't have a right to build, to use this for cemetery purposes as a right? No. And in point of fact, we advised them that they could have, from the very beginning, they could have saved themselves years of, all of us, years of litigation by simply adding, as an alternative relief, the variance. In other words, they could have applied for the interpretation and said, in the alternative, if the appeal is denied, we request the variance. Okay, I understand. Thank you. Judge Marrero. Thank you, Mr. Lieberman. Look at the application that the cemetery, frankly, seeks to get approved. And it's not for a garage or a house in the abstract. It's for a structure that is auxiliary to the use of the property as a cemetery. That being the case, the zoning board is already on record as having denied the building permit for that structure. And it also is the same zoning board that rezoned the property from cemetery to residential. So in that, against that backdrop, what is the realistic prospect that if the cemetery were to ask for a variance, that it would be approved, given the enormous history of contention about whether or not the southern portion should be used as cemetery or as residential? You have the same agency making the decision about a variance that it has already made concerning the building permit and the rezoning. I take issue with that characterization. First of all, the denial of the permit with the building inspector, not the ZBA, and the rezoning, first of all, there hasn't been a rezoning. The zoning hasn't changed, but cemeteries are permitted uses in the residential district, provided it meets the requirements of the zoning ordinance, one of which is the land area can't be expanded after January 1st, 1963. But my point being that the zoning board doesn't rezone the property. It only interprets the zoning ordinance and applies the zoning ordinance. So there are three different agencies here that are included in your question. One is the building inspector. Two is the zoning board. Excuse me, the building inspector's decision was upheld by the zoning board. Yes. So I'm saying that that same zoning board is what you're now asking the cemetery to go before and ask for a variance. Yes, but the issue of interpretation, whether somebody has the right to use a property as of right is very different, and the standards are completely different for an application for a variance. And if the zoning board were to deny this, I'm not saying it will, but let's say it does for the sake of argument, then that decision would be reviewable. But the standards are completely different. And it's not uncommon that an appeal would be denied, but a variance would be granted. And usually they are asked for at the same time. In this particular case, the appellant, for reasons that frankly I don't understand, refused to do that. What do you make of the appellant's argument that it does not want to make the application for variance because that might be in effect conceding that the property is not, cannot be used for cemetery purposes? It has, well, first of all, it has already done that. That's reversing the order here. Here they have already made that argument. So, you know, they're not conceding anything. They're litigating it. And by the way, just for the sake of accuracy, I think the appellate division, it hasn't been quite a year yet for the appellate division. It has been unduly long, but I would think that COVID may have something to do with that. The decision, the appellate division, I think was in last May. Thank you. All right, thank you. You're welcome. All right, thank you very much. Mr. Mulligan, I have no questions. Mr. Mulligan, you've reserved two minutes, and I want you to be sure to stick to two minutes. The clerk will interrupt if you're going over that. Thank you. I think I'll be less than two minutes, and then I'll finish, and I'll ask some very astute questions. And the fact of the matter is, when it comes down to it, for the purposes of this motion, this is not the Williamson case. And with all due respect to the lower court, I understand she expressed honestly from the beginning she had doubts about getting involved in local real estate matters. But it's second bond, and it's time. We're a cemetery, we're not a land developer. And the simple issue is, was that ZBA decision final? And as Judge Moreira pointed out, they affirmed the denial by the building inspector. Mr. Lieberman at first said that they didn't. Well, they did, if I heard correctly. And pardon me if I'm wrong. But that's not the issue. They moved to dismiss our petition on the grounds that the ZBA decision was not final. It clearly was. And given the history, it is absurd for any rational human being to think that they would ever give us a variance, which we believe we don't need in the first place, because we are a cemetery, have been since 1902, preserving our sacred mission. Thank you very much, Mr. Mulligan. Thank you.